**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**BRYSON CITY DIVISION**

**CIVIL NO. 2:05CV34**
**(2:03CR68-1)**

| | | |
|---|---|---|
| **JIMMY EARL COX,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Petitioner's motion

pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence

and an application to proceed without the prepayment of fees. Because no

filing fees are required for a § 2255 proceeding, the application will be

denied. No response is necessary from the Government.

## I. STANDARD OF REVIEW

A prisoner in federal custody may attack his conviction and sentence

on the grounds that it is in violation of the Constitution or United States law,

was imposed without jurisdiction, exceeds the maximum penalty, or is otherwise subject to collateral attack.  **28 U.S.C. § 2255.**  However,

> [i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

**Rule 4, Rules Governing Section 2255 Proceedings for the United States District Courts.**  The Court, having reviewed the record of criminal proceedings, enters summary dismissal for the reasons stated herein.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

On August 26, 2003, the Petitioner was charged in a six-count indictment with conspiracy to manufacture and distribute and to possess with intent to distribute a quantity of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One); manufacturing methamphetamine and aiding and abetting that offense, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts Two and Three); using a firearm during and in relation to a drug trafficking offense, in violation of 18

U.S.C. § 924(c)(1) (Count Four)[1]; using a chemical that created a serious hazard to other humans and wildlife and aiding and abetting that offense, in violation of 21 U.S.C. § 841(b)(6) and 18 U.S.C. § 2 (Count Five); and illegal possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) (Count Six).  **Bill of Indictment, filed August 26, 2003.**

On September 29, 2003, the Petitioner "in person and through counsel" entered into a plea agreement with the Government wherein he agreed to plead guilty to Counts One, Four and Five, in exchange for dismissal of the remaining counts by the Government.  **Plea Agreement, filed September 29, 2003, at 1.**  The plea agreement set forth the minimum and maximum sentences for each count to which the Petitioner was entering a plea.  For Count One, the Petitioner faced a minimum of five but no more than 40 years imprisonment, a $2 million fine, or both, and a term of not less than four years of supervised release; for Count Two, the Petitioner faced a minimum of five years but no more than life imprisonment and such imprisonment would be consecutive to any other

_____

[1]The indictment also charges the Petitioner with aiding and abetting this offense, although in the language of the charging count, no such allegation was made.

sentence, a fine of $250,000, and a maximum term of five years supervised release; and as to Count Five, the Petitioner faced a maximum of five years imprisonment and a $250,000 fine. *Id.*, *at 1-2*. The Petitioner also agreed that the amount of methamphetamine that was known to or reasonably foreseeable to him was in excess of 50 grams but less than 200 grams. *Id.*, *at 2*. The Petitioner further agreed that Counts One and Five would be grouped under U.S.S.G. § 2D1.1, which provided for a base offense level of 26 and to the enhancements for harm to humans or the environment (+3) and for an aggravating role pursuant to § 3B1.1(c) (+2), resulting in an adjusted offense level of 31. *Id.*, *at 2-3*. In addition, the Government agreed to a three-level reduction in the offense level provided the Petitioner acknowledged his role in all the relevant criminal conduct and assisted the authorities in the investigation. *Id.*, *at 3*. The Petitioner further agreed that his sentence would be within "the applicable guideline range" pursuant to § 5C1.1 and that neither he nor the Government would seek a departure from that range. *Id*.

On October 7, 2003, the Petitioner appeared before the Magistrate Judge for a Rule 11 hearing and entered his guilty plea. **Rule 11 Inquiry and Order of Acceptance of Plea, filed October 7, 2003.** After being

placed under oath by the Magistrate Judge, the Petitioner made the following representations: that he had reviewed the indictment and the plea agreement with his attorney; that his mind was clear and his purpose was to enter his plea of guilty; that he understood the minimum and maximum punishments for Counts One, Four and Five, including the consecutive sentence required to be imposed for Court Four; he understood the elements of each offense the Government would be required to prove beyond a reasonable doubt if there had been a trial in the matter; that the Court would be required to consider the applicable Sentencing Guidelines with limited right of departure; that by pleading guilty, he understood he was waiving his right to a jury trial; that he was pleading guilty because he was in fact guilty of the offenses; that his plea of guilty was "voluntary and not the result of coercion, threats or promises other than those contained in the written plea agreement;" that he was "entirely satisfied with the services of his attorney;" that he had reviewed the Sentencing Guidelines with his attorney and understood how they may apply to his case; and that he had no questions or comments regarding the proceeding and asked the Court to accept his guilty plea. ***See generally*, Rule 11, *supra*.** As is the custom in this Court, the Magistrate Judge completed the Rule 11 form and

recorded the Petitioner's answers to the questions; the Petitioner and his attorney then signed the Rule 11 form, and the Petitioner's guilty plea was accepted by the Court. ***Id.*, at 9-10.**

Petitioner's presentence report indicates that he completed eighth grade and had an extensive criminal record, which resulted in a criminal history category of V. **Presentence Investigation Report, prepared December 9, 2003, revised January 21, 2004.** It was also noted in both the presentence report and during Petitioner's Rule 11 inquiry, that he was taking muscle relaxants and prescription medication for a biopolar condition. ***Id.*, at 27-28; Rule 11 Inquiry, at 2-3.** Nevertheless, the Petitioner assured the Magistrate Judge at the Rule 11 hearing that his mind was clear and he understood what he was doing. **Rule 11, at 2.**

On February 25, 2004, the Petitioner was sentenced to a term of 138 months imprisonment on Count One and 60 months imprisonment on Count Five to run concurrently. As required by law and as acknowledged by the Petitioner at his Rule 11 hearing and in his plea agreement, a term of 60 months imprisonment on Count Four was imposed to run consecutively to the sentence imposed for Counts One and Five, for a total of 198 months imprisonment. **Judgment in a Criminal Case, filed March**

**9, 2004.** Petitioner did not file a notice of appeal nor does he contend he requested counsel to do so.

### III.  DISCUSSION

The Petitioner primarily argues that counsel advised him to plead guilty to Count Five when the evidence did not support such a charge.  He further argues that the enhancements imposed by the Court violated his constitutional rights as recognized by the Supreme Court in *Apprendi v. New* Jersey, 530 U.S. 466 (2000), Blakely *v. Washington State*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005).

As to Petitioner's argument that the evidence did not support a plea as to Count Five, he acknowledged in both the plea agreement and during the Rule 11 inquiry that he had committed the acts alleged in the indictment.  He also denies the truth of his criminal activity described in the presentence report.  *See* **Presentence Report,** *supra*, **at 5-7.**  In that report, the probation officer set forth in detail the Petitioner's statements to law enforcement officers about how he "cooked" the methamphetamine at a campsite located in the Nantahala National Forest and how he used of a variety of chemicals he knew to be dangerous.  ***Id.*, at 7.**  The cost of

removing the hazardous materials from the campsite amounted to $6,169 and the Court ordered restitution by the Petitioner and his co-defendant, jointly and severally, to the Government for the clean-up costs. ***Id.*, at 32; *see also*, Judgment in a Criminal Case, at 4.** The Court, therefore, finds Petitioner's arguments as to Count Five meritless.

To the extent that the Petitioner raises grounds based on anything other than ineffective assistance of counsel or prosecutorial misconduct, he waived his right to raise such issues in a motion pursuant to § 2255 in his plea agreement. Based on the Petitioner's plea agreement, his signature on the Rule 11 Inquiry, the advice he received from the Court at the Rule 11 hearing, and his representations in open court during that hearing, the Court finds Petitioner made a knowing and voluntary waiver of the right to attack his conviction or sentence by a collateral proceeding such as a § 2255 motion. ***See, United States v. Lemaster*, 403 F.3d 216, 220-21 (4th Cir. 2005) ("[W]e hold that a criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary. . . . [A] defendant's solemn declarations in open court affirming [a plea] agreement . . . carry a strong presumption of verity because courts must be able to rely on**

**the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." (internal quotations and citations omitted));** *United States v. General*, **278 F.3d 389 (4th Cir. 2002);** *United States v. Brown*, **232 F.3d 399 (4th Cir. 2000);** *United States v. Hoyle*, **33 F.3d 415, 418 (4th Cir. 1994);** *see also, United States v. Blick*, **408 F.3d 162, 173 (4th Cir. 2005) (holding that the Government as well as the defendant should receive the benefit of a binding plea agreement).**

In considering Petitioner's claims that he has not received adequate assistance of counsel,

> [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, **466 U.S. 668, 686 (1984).** Unless a defendant makes both showings, his claim of ineffective assistance of counsel must fail. *Id.* Thus, a defendant must show that counsel's performance fell below objective standards of reasonableness, and, that but for counsel's conduct, there was a reasonable probability the result would have been

different.  ***Id.*, at 688; *Hill v. Lockhart*, 474 U.S. 52 (1985); *Fields v. Attorney Gen.*, 956 F.2d 1290 (4th Cir. 1992) (In order to obtain relief from a guilty plea on the basis of ineffective assistance of counsel, a defendant must show both that counsel was incompetent and but for that incompetence, he would not have pled guilty).**  If the defendant fails to make the first showing, there is no need to consider the second. ***Strickland, supra*.**

The Petitioner continuously states that his attorney did not research Count Five, that it was not a substantive offense, and but for this "bad" advice, he would not have pled guilty.  This claim is clearly refuted by the Petitioner's statements in open court acknowledging the commission of the unlawful acts and his full understanding of the elements of the crime which the Government, but for his plea, would have had to prove beyond a reasonable doubt.  ***Lemaster*, 403 F.3d at 221-22.**  "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." ***Id.* (internal citations omitted).**  As recorded during the Rule 11 hearing, the

Petitioner acknowledged that he had told his attorney everything he wanted him to know, had discussed the plea agreement, the sentencing guidelines and his possible sentence and wanted the Court to accept his plea.  ***Id.*** **(rejecting defendant's argument that his attorney had failed to inform or misinformed him of the potential punishment).**  Indeed, the Petitioner told the Court that he was very satisfied with his attorney's performance.

Because Petitioner has failed to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment,"  the second prong of *Strickland* need not be reached.

Finally, the Petitioner claims he is entitled to relief based on the *Apprendi, Blakely* and *Booker* decisions.  The Supreme Court held in *Apprendi* that other than a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to the jury and proven beyond a reasonable doubt.  Besides the fact that the Petitioner entered into a guilty plea, he is mistaken that *Apprendi* would apply to his case in any event because his sentence is not beyond the prescribed statutory maximum.  ***See, e.g., United States v.***

***Bradford*, 7 Fed. Appx. 222, 223 n.\* (4ᵗʰ Cir. 2001) (citing *United States v. White*, 238 F.3d 537, 542 (4ᵗʰ Cir. 2001)).**

In *Blakely*, the Supreme Court held that Washington State's statutory sentencing scheme violated *Apprendi* because the sentencing court used aggravating factors, to which the defendant had not stipulated in his plea agreement, to enhance the defendant's sentence above the sentencing guideline range. However, *Blakely* does not apply retroactively to convictions, like the Petitioner's, that were final at the time that case was decided. **United States v. Price, 400 F.3d 844 (10ᵗʰ Cir. 2005); *Varela v. United States*, 400 F.3d 864 (11ᵗʰ Cir.), *cert. denied*, 126 S. Ct. 312 (2005); *Cooper-Smith v. Palmateer*, 397 F.3d 1236 (9ᵗʰ Cir.), *cert. denied*, 126 S. Ct. 442 (2005); *Green v. United States*, 397 F.3d 101, 103 (2d Cir. 2005); *United States v. Marshall*, 117 Fed. Appx. 269 (4ᵗʰ Cir. 2004).** The Petitioner's conviction became final in March 2004, prior to the *Blakely* decision in June 2004, and could not be retroactively applied in any event.

Petitioner's claim for relief pursuant to *United States v. Booker*, 543 U.S. 220 (2005), is rejected as well. In *Booker*, the Supreme Court held that the United States Sentencing Guidelines, as a mandatory sentencing

procedure, are unconstitutional but that they may be used as an advisory guide by sentencing courts.  The Fourth Circuit, as well as every circuit court which has addressed the issue of whether *Booker* may be applied retroactively to cases on collateral review, has held that *Booker* is not retroactive.  **United States v. Morris, 429 F.3d 65 (4th Cir. 2005) (Although *Booker* is a new rule of constitutional law, it is not a watershed rule and therefore does not apply retroactively to cases on collateral review.); United States v. Fowler, 133 Fed. Appx. 922 (4th Cir. 2005) ("Neither *Booker* nor *Blakely* announced a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review."); United States v. Cruz, 423 F.3d 1119 (9th Cir. 2005); United States v. Bellamy, 411 F.3d 1182 (10th Cir. 2005); Lloyd v. United States, 407 F.3d 608 (3d Cir.), cert. denied, 126 S. Ct. 288 (2005); Guzman v. United States, 404 F.3d 139 (2d Cir.), cert. denied, 126 S. Ct. 731 (2005); Humphress v. United States, 398 F.3d 855 (6th Cir.), cert. denied, 126 S. Ct. 199 (2005); McReynolds v. United States, 397 F.3d 479, 481 (7th Cir.), cert. denied, 125 S. Ct. 2559 (2005) ("We conclude, then, that *Booker* does not apply retroactively to criminal**

**cases that became final before its release on January 12, 2005.");**

***Green*, *supra*; *In re Anderson*, 396 F.3d 1336, 1339 (11th Cir. 2005).**

### IV.  ORDER

**IT IS, THEREFORE, ORDERED** that the Petitioner's application to proceed without the prepayment of fees is hereby **DENIED** as moot; and

**IT IS FURTHER ORDERED** that the Petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED.**  A Judgment is filed herewith.

Signed: February 9, 2006

Lacy H. Thornburg
United States District Judge